ROBIN F. WYNNE, Associate Justice
This case presents a question of law certified to this court by the United States District Court for the Western District of Arkansas in accordance with Rule 6-8 of the Rules of the Supreme Court. The federal district court certified the following question:
Whether Ark. Code Ann. § 14-56-202 confers upon cities of the first class the *479 exclusive power to issue or refuse to issue building permits and to regulate the building of houses, and thereby denies such power to cities of the second class, despite the "general powers" listed in Ark. Code Ann. § 14-56-201.[1 ]
As set out below, we answer the question in the affirmative.
The certified question arises from a complaint filed by petitioners First State Bank and Pinnacle Bank n/k/a Central Bank (collectively, the Bank) in the Washington County Circuit Court against the City of Elkins, Arkansas (the City); the case was removed to the federal district court by the City. The complaint is based on the City's moratorium on the issuance of building permits for lots within a partially developed residential subdivision called Stokenbury Farms. Among the relief sought was a declaratory judgment that the City lacked statutory authority to regulate the building of houses or to issue building permits for houses. In its certification order, the federal district court summarizes the factual background as follows:
According to the Complaint, on October 5, 2006, the Elkins City Council accepted the Final Plat for the Stokenbury Farms subdivision, which consisted of 138 lots, 136 of which were residential, and 2 of which contained detention ponds used to hold the subdivision's storm-water runoff. On the same day the Final Plat was submitted for approval, the Mayor of Elkins, City Clerk, Chairman of the Planning Commission, Building Inspector, and representatives from the Water, Police, and Fire Departments all approved the Final Plat. The subdivision's engineer executed and stamped the Final Plat and then filed it of record in the office of the Circuit Clerk and Ex-Officio Recorder of Washington County, Arkansas.
After the Final Plat was recorded, First State Bank agreed to refinance the debt that Stokenbury Farms, LLC, had incurred in developing and constructing the subdivision. About two years later, on September 26, 2008, Elkins filed a lawsuit against Stokenbury Farms, LLC, and some other entities that were involved in the construction and engineering of the detention ponds. The lawsuit alleged that the ponds failed to perform as a result of defective workmanship and did not drain. It appears the lawsuit was non-suited by Elkins, allegedly because Elkins had decided to wait and let the subdivision be "built out" first before taking further action. At some point after August 30, 2010, Stokenbury Farms, LLC defaulted on its financial obligations, and in lieu of foreclosure, deeded 105 undeveloped residential lots to First State Bank. Importantly, First State Bank did not take back two of the lots-the ones that contained the problematic detention ponds that had been the source of conflict with Elkins for the past several years. The Complaint explains that the detention-pond lots remained in the ownership of "an entity related to the developer or this entity's member(s)." The Complaint also makes clear that First State Bank believes it bears no financial responsibility for the condition and upkeep of the ponds, since it does not own the lots that contain the ponds.
Concern about the condition of the detention ponds continued to ebb and flow throughout the next two years until, finally, in late 2014, Elkins began complaining *480 to First State Bank about the high grass surrounding the ponds. Elkins mowed the grass at some point, and then charged First State Bank for the mowing service-allegedly double what the service actually cost. First State Bank then refused to pay the bill, which led to more litigation, and the relationship between Elkins and the Bank deteriorated. On November 17, 2016, Elkins's city council enacted a moratorium "on issuance of building permits in Stokenbury Farms Subdivision until an engineer certifies the functionality of the existing retention ponds." First State Bank maintains that it did not receive notice that Elkins was even considering issuing such a moratorium, and did not receive actual notice that the moratorium had been passed until February 28, 2017, after First State Bank issued a direct request to Elkins for this information. Although at the time First State Bank believed that Elkins lacked the legislative authority to issue a moratorium on building, the Bank nonetheless requested that Elkins supply it with "definitive conditions upon which Elkins would agree to lift the moratorium...." In First State Bank's view, Elkins' response to this request was "vague and non-committal." First State Bank then attempted "to obtain a building permit for residential lots within the Subdivision" but was "rebuffed by Elkins." Fearing that it would lose money on its investment in the subdivision due to the imposition of the moratorium on further construction, First State Bank filed suit in Washington County Circuit Court on April 12, 2017, challenging the constitutionality of the moratorium and Elkins's authority to enforce it. The case was ultimately removed to this Court on May 12, 2017.
(Citations omitted.) According to the certification order, the City has filed a motion to dismiss count I of the complaint, which concerns its statutory authority to regulate the building of houses, and the Bank has filed a motion for judgment on the pleadings as to that count. This leads to the certified question: Whether Ark. Code Ann. § 14-56-202 confers upon cities of the first class the exclusive power to issue or refuse to issue building permits and to regulate the building of houses, and thereby denies such power to cities of the second class, despite the "general powers" listed in Ark. Code Ann. § 14-56-201.
We begin with the language of the statutes. Arkansas Code Annotated section 14-56-201 (Repl. 1998), titled "General powers," provides as follows:
Municipal corporations shall have the power to:
(1) Regulate the erection, construction, reconstruction, alteration, and repair of buildings;
(2) Make regulations for the purpose of guarding against accidents by fire;
(3) Require the use of fireproof or fire-resistant materials in the erection, construction, reconstruction, alteration, or repairs of buildings; and
(4) Provide for the removal of any buildings, or additions thereto, erected contrary to this prohibition.
Arkansas Code Annotated section 14-56-202 (Supp. 2017), titled "Additional powers of cities of the first class," provides:
(a)(1) The following enlarged and additional powers are conferred upon cities of the first class.
(2) They shall have the power to:
(A) Regulate the building of houses;
(B) Provide that no house or structure shall be erected within the city limits except upon a permit to be issued by such officer as the city council shall designate; and *481 (C) Provide that no permit shall be issued for the building of any house or structure deemed to be unsafe, unsanitary, obnoxious, or detrimental to the public welfare.
(b) However, the authority to appoint and remove department heads, including the building official, shall be governed by § 14-42-110 regardless of the classification of the city or town.
According to the Bank, the City lacks the power to regulate the construction of houses or to require building permits for the construction of houses under sections 14-45-201 and 14-56-202 because it is a city of the second class. See Ark. Code Ann. § 14-37-103 (population requirements for classification as city of the first class, city of the second class, and incorporated town). The Bank contends that cities of the second class (as well as lesser categories of municipalities) are not conferred with the enlarged and additional powers to regulate the construction of houses or require building permits for home construction for three primary reasons:
(1) The plain language of Section 202 empowers only cities of the first class with the "enlarged" and "additional powers" to regulate the building of houses or to require building permits for the erection of houses or structures;
(2) Applying the principles of statutory construction and interpretation to Sections 201 and 202, the result is Arkansas law empowers only cities of the first class with the "enlarged and additional powers" to regulate the building of houses or to require building permits for the erection of houses because:
a. Section 202 would be deprived of any meaning if the "general" authority in Section 201 also governed the power to regulate the building of houses and to require building permits for the erection of houses; and
b. Under the doctrines of statutory construction, the general powers conveyed under Section 201 must yield to the more specific Section 202;
(3) Section 201 does not empower cities of the second class to issue or refuse to issue building permits.
The certified question of law presents a matter of statutory interpretation. The basic rule of statutory construction is to give effect to the intent of the General Assembly. Nolan v. Little , 359 Ark. 161, 165, 196 S.W.3d 1, 3 (2004). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. Id. However, this court will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. Id. This court takes pains to reconcile statutory provisions to make them consistent, harmonious, and sensible. Id.
First, the Bank contends that the plain language of section 14-56-202 makes it clear that Arkansas law empowers only cities of the first class with the "enlarged and additional powers" to regulate the building of houses or to require building permits for the erection of houses. We agree. While section 14-56-201 provides municipalities the authority generally to regulate the construction of buildings , the only mention of houses is in section 14-56-202, which grants cities of the first class three specific "enlarged and additional powers": (1) the power to regulate the *482 building of houses; (2) the power to provide that no house or structure will be constructed within the city limits without a building permit; and (3) the power to provide that no permit will be issued for the building of any house or structure deemed to be unsafe, unsanitary, obnoxious, or detrimental to the public. This is an unambiguous grant to cities of the first class the power to regulate the construction of houses and a specific limitation of that power to only cities of the first class.
The City also maintains that sections 14-56-201 and 14-56-202 are unambiguous, but argues that a municipality's general authority to regulate "buildings" under section 14-56-201 necessarily encompasses "houses"-a type of building. The City maintains that, should this court find that the statutes are ambiguous, the legislative history resolves any ambiguity by confirming that cities of the second class have the authority to regulate the building of houses. The Bank aptly summarizes and responds to the City's argument as follows:
Elkins cites Act 352 of 1907 (which created Section 202) and compares it with the then-existing language of Section 201. Elkins states that the earlier version of Section 201 notably included the language that "[Municipal corporations] shall have the power to regulate the building of houses." This being the case, it begs the question-why did the General Assembly remove "houses" in the current version of Section 201? If all municipal corporations enjoyed the power to regulate the building of houses at one point in time (as Elkins suggests), the removal of "houses" from Section 201 coupled with the preservation of the reference to "houses" in Section 202 (and providing that the regulation of home construction constitutes "enlarged and additional powers") evidences the General Assembly's intent to narrow that power to regulate construction of houses to cities of the first class.
The City suggests that the "actual difference" between sections 14-56-201 and 14-56-202 is that "the latter provides for the regulation of structures in addition to buildings for cities of the first class." However, this interpretation does not explain why the General Assembly included the word "houses" in section 14-56-202. "[W]hen interpreting statutes, the rule is settled that a general statute must yield when there is a specific statute involving the particular matter." Vill. Mkt., Inc. v. State Farm Gen. Ins. Co. , 334 Ark. 227, 229, 975 S.W.2d 86, 86 (1998) (per curiam). Here, the general authority for all municipalities to regulate buildings must yield to the specific "additional and enlarged" authority for cities of the first class to regulate the building of houses.
Next, the City argues that the following provide authority for its regulation of housing: the municipal-planning statutes contained in Chapter 56, Title 14 of the Arkansas Code; the fact that that the General Assembly abolished Dillon's Rule[2] in Act 1187 of 2011, making Arkansas a home rule state in which, the City argues, the General Assembly has not expressly revoked the right to issue and deny building permits; and the cities' police power. None of these arguments are *483 directly relevant to the certified question, and we therefore decline to address them.
In conclusion, we answer the certified question in the affirmative. Arkansas Code Annotated section 14-56-202 confers upon cities of the first class the exclusive power to issue or refuse to issue building permits and to regulate the building of houses and thereby denies such power to cities of the second class, despite the "general powers" listed in Arkansas Code Annotated section 14-56-201.
Certified question answered.

The City asks this court to reformulate the question as follows: "Under Arkansas law, may cities of the second class (1) regulate the building of houses; and (2) issue and deny building permits?" We decline to reformulate the question and instead answer the question as certified by the district court.

Dillon's Rule is a restrictive view of municipal power that a municipal corporation possesses and can exercise only powers granted in express words, those necessarily or fairly implied in, or incident to, the powers expressly granted, and those essential to the accomplishment of the declared objects and purposes of the corporation-not simply convenient, but indispensable. Davis v. City of Blytheville , 2015 Ark. 482, at 4, 478 S.W.3d 214, 217 (citing Tompos v. City of Fayetteville , 280 Ark. 435, 438, 658 S.W.2d 404, 406 (1983) ).